(120 App. Div. 433)

### HALSTED et al. v. POSTAL TELEGRAPH CABLE CO.

(Supreme Court, Appellate Division, Second Department. June 7, 1907.)

TELEGRAPHS—TRANSMISSION OF MESSAGES.

Where plaintiff wrote defendant, asking for quotations on certain goods by telegraph, and the message, which was an unrepeated one, was sent to plaintiff on a blank exempting the telegraph company from liability for mistakes in an unrepeated message, plaintiff was not entitled to recover in an action in tort for damages arising from a mistake in the message.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, §§ 26, 43, 44.]

Gaynor and Hooker, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Gilbert C. Halsted and another against the Postal Telegraph Cable Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and GAYNOR, JJ.

Charles F. Brown (Thomas B. Jones, on the brief), for appellant.
George D. Beattys, for respondents.

WOODWARD, J. The plaintiffs in this action were engaged in manufacturing beef cotton bags. They wrote a letter to the Cannon Manufacturing Company, at Concord, N. C., asking for prices upon a line of cotton goods by telegraph. The Cannon Manufacturing Company, in response to this request, delivered a message to the defendant, to be forwarded to the plaintiffs in the city of New York, which message was in words and figures as follows:

"Concord, N. C. July 27th, 1903.

"E. S. Halsted & Co., 75 Pearl St., New York, N. Y.: Deliveries commencing about August fifteenth. Light narrow two eighty wide three eighty net. Paid. Cannon Mfg. Co."

The message as received by the plaintiffs, aside from the address, read as follows:

"Delivered commencing about August fifteenth light narrow two eighth wide three eighth net."

Upon receiving this message the plaintiffs, construing it to offer the kind of goods they desired at $2\frac{1}{8}$ and $3\frac{1}{8}$ cents per yard, respectively,

entered into a contract with Armour & Co., of Chicago, for a large quantity of beef cotton bags, basing their figures upon the prices supposed to have been quoted. They ordered the required quantity of raw material of the Cannon Manufacturing Company, and it was only upon the latter company receiving the order that it was discovered that the prices really quoted were $0.028 and $0.038 per yard, instead of those contained in the message as delivered, and it is not disputed that the difference between the prices as intended to be quoted, and as actually received by the plaintiffs, makes a difference equal to the amount of the verdict involved in the judgment appealed from.

A number of more or less interesting questions are discussed in the elaborate briefs of counsel; but, as we are of opinion that the judgment cannot be sustained because of a fundamental defect in the action, it will be unnecessary to prolong the discussion beyond the single point suggested. The telegram here under consideration, and which forms the basis of the plaintiffs' claim for damages, was sent by the Cannon Manufacturing Company, at the request of the plaintiffs, upon a blank furnished by the defendant. The language of the blank, in so far as it is material here, is as follows:

"Send the following message subject to the terms on back hereof, which are hereby agreed to. * * * Read the notice and agreement on back."

This was signed by the sender, who was acting at the request of the plaintiffs, and might properly be regarded as the plaintiffs' agent for such purposes, if it was important to consider this view of the case. On the back of the blank was the provision that:

"All messages taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending the same," etc.

It is not disputed that the message here involved was an unrepeated message, and the learned court charged the jury that as between the sender and the company this was a valid and lawful limitation by contract; but he charged that it did not limit the rights of the plaintiffs, evidently upon the theory that, the action being one sounding in tort, the defendants were liable to the plaintiffs for the actual damages sustained, and it is this broad question, going to the substance of the action, which we believe constitutes the fatal error in this case. It is true, in the case of Pearsall v. W. U. T. Co., 124 N. Y. 256, 26 N. E. 534, 21 Am. St. Rep. 662, chiefly relied upon by the respondents to support the judgment, it was held that, where the company received a message for transmission without conditions, it became liable under the common law for the damages suffered by reason of errors in transmission; but the same case distinctly approves the doctrine of Ellis v. American Telegraph Co., 13 Allen (Mass.) 226, the leading Massachusetts case upon the question involved in this appeal, Grinnell v. Western Union Telegraph Co., 113 Mass. 299, 303, 18 Am. Rep. 485, and Clement v. Western Union Telegraph Co., 137 Mass. 463, 466,

where the facts are not distinguishable in principle from those involved in this action, and the court held squarely that an action on the part of the person receiving the message, sounding in tort, would not lie for an amount in excess of the amount received for the service, where the message was an unrepeated message, and no other negligence was established than that of errors in transmission not due to fraud or gross negligence. In the Massachusetts case cited, and which we believe lays down the law of this case, the message was written upon a blank substantially the same as the one here under consideration, and the error in transmission consisted in changing "twenty-five" to "seventy-five" dollars, upon a contract involving the price to be allowed for ten men for some service, and this was clearly as important an error, so far as it would appear from the message itself, as the one in the case at bar. In discussing the regulation adopted by the company, the court say:

"There is nothing in this regulation which tends to embarrass or hinder the free use of the telegraph, or to impose on those having occasion to transmit or receive messages any onerous or impracticable duty. The repetition of a message may be unimportant. A mistake in its transmission might occasion no serious damage or inconvenience to the parties interested. Whether it would do so or not would be within the knowledge of the sender or receiver, rather than within that of the operator who transmitted it. The latter could rarely be expected to know what would be the consequences of an error in its transmission. It is therefore a most reasonable requisition that it should be left to those who know the occasion and the subject of the message, and who can best judge of the consequences attendant upon any mistake in sending it, to determine whether it is of a nature to render a repetition necessary to ascertain its accuracy, instead of throwing this burden on the owner or conductor of the telegraph, who cannot be supposed to know the effect of a mistake, or the consequences in damages of a failure to transmit it correctly. Nor can we see any good reason why, on similar grounds, it would not be a just and proper exercise of the right to establish regulations for the conduct of such business to require that persons transmitting or receiving messages should make known the extent and nature of the risk to be assumed by the conductor or owner of the telegraph, if, in case of failure to transmit them accurately, a pecuniary loss would be involved, for which he might be held liable. By no other means could they be certain of obtaining a compensation proportionate to the risk to be assumed, or an opportunity of exercising unusual diligence to protect themselves against the chances of mistake or miscarriage. * * * The defendants were entitled to insist on a compliance with that part of their regulations which required that the message should be repeated, and that the extent of the risk should be made known to them, if they were to be held to insure the safe and correct transmission of the message, or in case of failure, to be responsible for all the damages consequent on delays or errors. Of this regulation the plaintiff had notice. Although he entered into no express contract with the defendants, and cannot be held to have made any special stipulations with them by which he is bound, he did consent to receive at their hands a message which he alleges it was their duty to deliver to him. It is on this undertaking by the defendants, and for the breach of duty of which he alleges they are guilty, that he seeks to hold them in this action. It may, therefore, be a sufficient answer to such a claim that, according to the reasonable regulations by which they were governed in the performance of their undertaking towards the plaintiff, and of which he had notice, they have committed no breach of duty for which they can be held liable to him. Besides, it is difficult to see how the plaintiff, who claims through the contract entered into by the sender of the message with the defendants, which created the duty and obligation resting on the defendants, can claim any higher or different degree of diligence than that which was stipulated for by the parties to the contract. Certainly a derivative or

incidental right cannot be greater or more extensive than that which attached to the principal or source whence such right accrued or was derived."

It might have been said, with equal force, that as the regulation was a reasonable one on the part of the company, and it was not obliged to accept the duty of transmitting the same except upon a compliance with such regulation by the sender, no higher obligation could be predicated in favor of the plaintiff than that which the company accepted. If the defendant in the case at bar had been obliged to accept and transmit the message without regulations, then it would assume its common-law obligations; but having the right to make regulations, and being under no obligations to accept the message for transmission unless the parties interested agreed to abide by such reasonable regulations, and it appearing that the sender did sign the blank provided by the company, and which contained the limitations above mentioned, it must be presumed that the company undertook the duty only as thus limited by its reasonable regulations, and whether the action is deemed to rest upon the contract of the sender, or to result from a breach of duty, the limitation upon the amount of damages to be recovered being reasonable, the plaintiff has no standing to maintain this action unless he is the real principal in the transaction, and then only to the extent of the amount paid for the transmission of the message.

We find no authority binding upon this court which lays down any different doctrine than that of the leading Massachusetts case, of which our Court of Appeals says that "the reasons are clearly and satisfactorily stated for the existence of the rule that telegraph companies are not, unless they expressly contract, held to warrant or insure the accurate transmission or prompt delivery of messages, and are only liable for negligence," which clearly refers to negligence going to the essence of the contract or duty, and not to mere errors in transmission, where the company has stipulated that it will not be liable for such errors except under the conditions which it names, and which the courts have held to be reasonable regulations. The right to make a reasonable regulation is a right on the part of a public or quasi public corporation to refuse to perform a duty except upon compliance with such regulations, and while the defendant might waive such regulations, and accept the duty of transmitting messages under its common-law liabilities, where it provides blanks and accepts messages only under such regulations, it owes no duty higher than that provided in its regulations.

The judgment and order appealed from should be reversed, with costs.

HIRSCHBERG, P. J., and JENKS, J., concur.

GAYNOR, J. (dissenting). The plaintiffs were the receivers of the message. The contract limiting the defendant's liability was with the sender, not with the receivers, of the message. The receivers are not bound by it. It does not even purport to limit the liability of the company to them. This action is not based on it, but on a negligent breach of the duty which the defendant owed to the plain-

tiffs to deliver to them the message in the words in which it received it from the sender. The defendant is a public service corporation, exercises "a sort of public office" (New Jersey Nav. Co. v. Merchants' Bank, 6 How. [U. S.] p. 382, 12 L. Ed. 465), and has public duties to perform. This is a principle now thoroughly understood. It does not seem plain to many who have considered the matter how, on principle, a public service corporation may be allowed to evade liability for a neglect of its public duty, by which an individual is damaged, by an agreement to that effect, any more than any public officer may do the like. However far the decisions of some states may have gone in that direction, inadvertently or otherwise, no such question confronts us in this case, for the defendant had no such agreement with the plaintiffs. Its liability in this case is placed by the complaint on a negligent breach of its duty to the plaintiffs, and on that basis they had the right to recover. The learned trial judge therefore committed no error in refusing to rule that the contract between the defendant and the sender bound the plaintiffs. In the contrariety of decision in this country, the principle of duty stated in the foregoing is at all events established by the great weight of authority, and after the elucidation of it which we have had from statesmen and publicists in recent years, it is now plainer than ever. The law is a progressive science. A collection here of the principal decisions in favor of the foregoing may not be attributed to the overgrown habit of citation in a case so important to every one as this is. De Rutte v. N. Y. Tel. Co., 1 Daly, 547; Rose v. U. S. Tel. Co. 3 Abb. Prac. (N. S.) 408; Elsey v. Postal T. Co. (Com. Pl.) 3 N. Y. Supp. 117; Wolfskehl v. W. U. Tel. Co., 46 Hun, 542; Elwood v. W. U. Tel. Co., 45 N. Y. 549, 6 Am. Rep. 140; Breese v. U. S. Tel. Co., 48 N. Y. 132, 8 Am. Rep. 526; Lowery v. W. U. Tel. Co., 60 N. Y. 198, 19 Am. Rep. 154; Pearsall v. W. U. Tel. Co., 124 N. Y. 256, 26 N. E. 534, 21 Am. St. Rep. 662; Curtin v. W. U. Tel. Co., 16 Misc. Rep. 347, 38 N. Y. Supp. 58; N. Y. & W. P. Tel. Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338; Tobin v. Telegraph Co., 146 Pa. 375, 23 Atl. 324, 28 Am. St. Rep. 802; Harris v. W. U. Tel. Co., 9 Phila. (Pa.) 88; Bartlett v. W. U. Tel. Co., 62 Me. 209, 16 Am. Rep. 437; W. U. Tel. Co. v. Du Bois, 128 Ill. 248, 21 N. E. 4, 15 Am. St. Rep. 109; Webbe v. W. U. Tel. Co., 169 Ill. 610, 48 N. E. 670, 61 Am. St. Rep. 207; Greene v. W. U. Tel. Co., 136 N. C. 489, 49 S. E. 165, 67 L. R. A. 985, 103 Am. St. Rep. 955; McCord v. W. U. Tel. Co., 39 Minn. 181, 39 N. W. 315, 1 L. R. A. 143, 12 Am. St. Rep. 636; Smith v. W. U. Tel. Co., 83 Ky. 104, 4 Am. St. Rep. 126; Telegraph Co. v. Longwill, 5 N. M. 308, 21 Pac. 339; Shingleur v. Telegraph Co., 72 Miss. 1030, 18 South. 425, 30 L. R. A. 444, 48 Am. St. Rep. 604; Becker v. W. U. Tel. Co., 11 Neb. 87, 7 N. W. 868, 38 Am. Rep. 356; Fererro v. W. U. Tel. Co., 35 L. R. A. 548, 9 App. D. C. 455; W. U. Tel. Co. v. Richman, 6 Cent. Rep. 565.

Where there is no contract limiting the company's liability, it is liable for the full amount of damages caused by any breach of its public duty (or negligence, as some call it) to either the sender or receiver— unless it be the law that it is under no such duty. If telegraph companies be under no such duty to receivers of messages, then we do not need to bother our heads about the contract limiting this defendant's

liability which it made with the sender in this case—it is wholly irrelevant. But if they are under such a duty to receivers of messages, i. e., to use reasonable care to deliver to them messages in the words in which they are received from senders, then the plaintiffs in this case are entitled to recover all the damages they have sustained by the breach of such duty; for if the sender was capable of limiting by contract with the company the amount of the damages these plaintiffs would be entitled to recover (a thing by no means to be admitted), it suffices that the sender made no such contract. It (the sender) only contracted that its damage should be limited to the amount paid by it to the company to transmit the message, unless it paid an additional sum to have the message repeated.

Moreover, the sender could not be damaged whether the message went right or wrong, and as it therefore had no interest to induce it to pay for a repetition, there was no consideration for any contract by it. How can the neglect of a sender to pay for a repetition in such a case be the basis of a contract by the sender limiting the duty and liability of the company to the receiver?

Telegraph companies being under a public duty (i. e., a duty arising out of the public service which they are licensed or incorporated by government to perform) to receivers of messages, senders of messages cannot by contract lessen or do away with that duty. They may only do so in respect of the duty due to themselves. The sender of a telegraph message is in no sense the agent of the receiver. There may be no accord between them; they may even be in hostility to each other, and the message may be adverse instead of friendly. The rules between consignor and consignee, shipper and purchaser, do not apply. The decisions are agreed that the law of common carrier does not apply to telegraph companies. There is no analogy on which to apply it.

The objection that gross negligence of the defendant was not established by the evidence is immaterial. The complaint alleged, and the charge of the learned trial judge made a verdict depend upon, gross negligence, it is true. But there is no rule requiring proof of gross negligence in the transmission of telegraphic messages. Some decisions are to the effect that an agreement limiting the liability of a telegraph company (like that with the sender in this case) does not cover a case of gross negligence, which is a very different thing. Breese v. W. U. Tel. Co., 48 N. Y. 141, 8 Am. Rep. 526; Kiley v. W. U. Tel. Co., 109 N. Y. 236, 16 N. E. 75; Pearsall v. W. U. Tel. Co., 124 N. Y. 256, 26 N. E. 534, 21 Am. St. Rep. 662. It only sets a limit on the power of such companies, the same as of common carriers, to limit their liability by agreement. The courts quite generally say that they are not able to define gross negligence, or distinguish it from ordinary negligence, but they leave it to juries to do so, although juries must find the task just as impossible as the courts. Will v. Postal Tel. Co., 3 App. Div. 22, 37 N. Y. Supp. 933; Rieser v. Met. Ex. Co., 45 Misc. Rep. 632, 91 N. Y. Supp. 170; N. Y. C. R. Co. v. Lockwood, 17 Wall. (U. S.) 357, 21 L. Ed. 627; Steamboat v. King, 16 How. (U. S.) 470, 14 L. Ed. 1019; Milwaukee & St. P. R. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; Hart v. W. U. Tel. Co., 66 Cal. 579, 6 Pac. 637, 56 Am. Rep. 119; Storer v. Gowan, 18 Me. 177;

Meek v. Penn. Co., 38 Ohio St. 632. But it is not necessary to go into all this, or do more than mention it, for there being no agreement of limitation of liability in this case which affects the plaintiffs, it is not necessary for us to try to set up a standard and definition of gross negligence and consider whether the evidence reached it.

It suffices to mention the leading and typical case which is contrary to the foregoing (Ellis v. Amer. T. Co., 95 Mass. 226), in that it holds that the right of a receiver of a telegraphic message to damages against the telegraph company is derived from, or is incidental to or dependent upon, the contract between the sender and the company, instead of the public duty of the company. The decision therein and in the cases of that class is not the law of this state. The distinction or line of cleavage between the cases is that some would rest the liability of telegraph companies on breach of contract only, disregarding the public duty they owe independently of any contract, and which is made the basis of liability by the opposing set of cases.

The judgment should be affirmed.

HOOKER, J., concurs.