## GARDNER v. WESTERN UNION TELEGRAPH CO.

### (Circuit Court of Appeals, Eighth Circuit.   February 28, 1916.)

### No. 4404.

1. TELEGRAPHS AND TELEPHONES 54(7)—DELAY IN DELIVERY—ACTION IN TORT—NOTICE OF CLAIM.

The addressee of a telegram, suing in tort for damages resulting from delay in delivering the telegram to him, is bound by the provision of the contract between the company and the sender requiring notice of any claim for damages to be given within 60 days, since the only duty of the company to the addressee arose out of that contract.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 45, 46; Dec. Dig. 54(7).]

2. TELEGRAPHS AND TELEPHONES 54(4)—CONTRACT—NOTICE OF CLAIM.

A provision in a contract for the transmission of a telegram requiring notice of a claim for damages to be given within 60 days is valid at common law.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 42, 46; Dec. Dig. 54(4).]

3. COURTS 366(1)—RULES OF DECISION—CONSTRUCTION OF STATE CONSTITUTION.

The construction of Const. Okl. art. 23, § 9, making void any provision stipulating for notice or demand other than such as may be provided by law as a condition precedent to any claim or liability, by the Supreme

Court of that state, is binding on the federal court in an action for delay in delivery of a telegram, to which the provision is applicable.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 957; Dec. Dig. ☞366(1).]

4. COMMERCE ☞8—INTERSTATE COMMERCE—REGULATIONS—INTERSTATE TELEGRAMS.

By Act. Feb. 4, 1887, c. 104, 24 Stat. 379, §§ 1, 6, 15, as amended June 18, 1910 (36 Stat. 539, c. 309 [Comp. St. §§ 8563, 8569, 8583]), and sections 2, 12 (Comp. St. §§ 8564, 8576), which make that act applicable to interstate telegraph business and make interstate telegraph companies common carriers of messages, who are required to publish their rates and regulations subject to control by the Interstate Commerce Commission, Congress occupied the whole field of regulating interstate telegraph business, and therefore Const. Okl. art. 23, § 9, making void any contract stipulating for notice or demand other than such as provided by law, as a condition precedent to liability, does not invalidate a clause in a contract for the sending of a telegram from, the point in Oklahoma to a point in Kansas, which provides that the company shall not be liable for damages unless the claim is presented in writing within 60 days after the message is filed with the company for transmission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.]

5. COMMERCE ☞85—INTERSTATE COMMERCE—REGULATIONS—DETERMINATION OF REASONABLENESS.

The question whether a regulation by an interstate telegraph company requiring notice of claim to be given within 60 days is reasonable is for the Interstate Commerce Commission to determine.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. ☞85.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by John A. Gardner against the Western Union Telegraph Company. Judgment for the defendant on directed verdict, and plaintiff brings error. Affirmed.

Charles R. Alexander, of Woodward, Okl. (Howard W. Patton, of Woodward, Okl., on the brief), for plaintiff in error.

Frank Wells and Rush Taggart, both of New York City (Albert T. Benedict and Francis Raymond Stark, both of New York City, and James R. Keaton, David I. Johnston, and George G. Barnes, all of Oklahoma City, Okl., on the brief), for defendant in error.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Gardner, hereinafter called the plaintiff, sued the Western Union Telegraph Company, hereinafter called the Company, for the delay in delivering a message to him which had been sent by Walter B. Scoville from Syracuse, Kan., to Quinlan, Okl., September 20, 1911. At the close of all the evidence taken at the trial of the action the court directed a verdict against the plaintiff, and he brings the case here assigning this ruling of the court as error.

The undisputed facts shown at the trial are as follows:

On the date of the message hereinafter set forth, the plaintiff was and had been a broom corn buyer at Quinlan, Okl., for about ten years.

He had an understanding with the Scoville Bros. that they would pay him $5 per ton commission on all broom corn purchased by him at the market price upon their request. On September 20, 1911, Scoville sent the following night letter:

"Send the following night letter subject to the terms on back hereof, which are hereby agreed to:                                                60 Paid.

"Syracuse, Ks., Sept. 20, 1911.

"To John Gardner, Quinland, Okla.:

"Hope you have secured choice crops amounting to five cars or more we need it so do not give it up even though you have to pay higher than we thought we must have it in fact to show our competitors a merry chase. So please secure all you can that is pea green. Hope you are feeling better.

"Walter B. Scoville."

The terms on the back of said message, which are referred to above and which are material in the consideration of this case, were as follows:

"Night Letter.

"All night letter messages taken by this company are subject to the following terms which are hereby agreed to:

"The Western Union Telegraph Company will receive not later than midnight NIGHT LETTERS, to be transmitted only for delivery on the morning of the next ensuing business day, at rates still lower than its standard night message rates, as follows: The standard day rate for ten words shall be charged for the transmission of fifty words or less, and one-fifth of such standard day rate for ten words shall be charged for each additional ten words or less.

"To guard against mistakes or delays, the sender of a message should order it REPEATED; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, THIS IS AN UNREPEATED MESSAGE AND PAID FOR AS SUCH, in consideration whereof it is agreed between the sender of the message and this Company as follows:

"6. The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the Company for transmission."

The night letter was received at Quinlan, Okl., at 11:15 p. m., on the day of its date, but was not delivered to the plaintiff until September 25, 1911, at 10 o'clock a. m. The evidence showed that on account of the delay in the delivery of the message the plaintiff suffered material damage in the purchase of broom corn at a certain price and subsequent decrease in the market value thereof. No claim for damages was presented to the Company by the plaintiff until on or about October 22, 1912. It was stipulated at the trial that A. R. Lingafelt, district commercial superintendent of the Company for the states of Oklahoma and Arkansas, would testify, if present:

"That he has knowledge and information concerning that department of defendant company which has to do with the filing of its rates, rules, tariffs and regulations and information with the Interstate Commerce Commission, as provided by law, and that such tariffs, rates, rules and regulations as are contained in the general tariff book for the year commencing July, 1911 (a printed copy of which will be offered in evidence in above case and more particularly identified), together with the regular printed sending blanks, generally and uniformly used by said company in its business, constitute the terms and conditions upon which the defendant company is doing business as a carrier of messages, and that said rates, tariffs, rules and regulations of

defendant company, as published in said tariff book, together with said blank forms, were within a reasonable time after July, 1911, and now are, offered for filing with the Interstate Commerce Commission, and are established and published annually with the knowledge and acquiescence of said Interstate Commerce Commission."

[1] In order to sustain the ruling of the trial court we must decide that the regulation in regard to the presentation of claims for damages within 60 days is valid as against the plaintiff. There is no indication on the face of the message that it was not an unrepeated message and paid for as such; hence, under the terms of the contract between Scoville and the Company the message must be considered as an unrepeated night letter for which the standard rate for unrepeated night letters was paid. In consideration of this rate Scoville agreed:

"That the company should not be liable for damages or statutory penalties in any case where the claim was not presented in writing within sixty days after the message was filed with the Company for transmission."

We accept the contention of counsel that this action is not upon the contract between Scoville and the Company strictly speaking, but for damages arising from a failure on the part of the Company to promptly perform a duty which under the law it owed the plaintiff. In other words, it is an action in tort. Assuming for the present that the regulation was valid as between Scoville and the Company the question then presents itself as to whether it is binding on the plaintiff notwithstanding the fact that this action is in tort and not on the contract.

There is not entire harmony among the authorities upon this question, but upon principle and sound reason we think the plaintiff is bound by the regulation in relation to the presentation of claims for damages. Let us analyze plaintiff's case. He says that the Company was negligent in failing to deliver the message promptly. Negligence arises from a violation of duty owing by one person to another. If there is no duty there is no negligence. Without the contract between Scoville and the Company, the latter owed the plaintiff no duty, and hence there could be no negligence in the absence of the contract. So it plainly appears that plaintiff would have no cause of action except for the contract because the duty of the Company arose from the contract. May the plaintiff charge the Company with the duty arising from the contract, and at the same time repudiate one of the conditions upon which the duty was assumed? We think not. The following cases support this view: Broom v. Western Union Telegraph Co., 71 S. C. 506, 51 S. E. 259, 4 Ann. Cas. 611; Halsted v. Postal Telegraph Cable Co., 120 App. Div. 433, 104 N. Y. Supp. 1016, affirmed by the Court of Appeals 193 N. Y. 293, 85 N. E. 1078, 19 L. R. A. (N. S.) 1026, 127 Am. St. Rep. 952; Ellis v. American Telegraph Co., 13 Allen (Mass.) 226; McGehee v. Western Union Telegraph Co., 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512; M. M. Stone & Co., v. Postal Telegraph Co., 31 R. I. 174, 76 Atl. 762, 29 L. R. A. (N. S.) 795; Western Union Telegraph Co. v. Van Cleave, 107 Ky. 464, 54 S. W. 827, 92 Am. St. Rep. 366; Coit v. Western Union Telegraph Co., 130 Cal. 657, 63 Pac. 83, 53 L. R. A. 678, 80 Am. St. Rep. 153; Frazier v. Western Union Telegraph Co., 45 Or. 414, 78 Pac. 330, 67

L. R. A. 319, 2 Ann. Cas. 396; Western Union Telegraph Co. v. Dant, 42 Wash. Law Rep. 722 (D. C. Court of Appeals); Findlay v. Western Union Telegraph Co. (C. C.) 64 Fed. 459; Culberson's Case, 79 Tex. 65, 15 S. W. 219; Manier's Case, 94 Tenn. 442, 29 S. W. 732.

[2] We have disposed of the question under discussion on the theory that the 60-day clause was valid at common law as between Scoville and the Company. We have no doubt of this. Southern Express Co. v. Caldwell, 88 U. S. (21 Wall.) 264, 22 L. Ed. 556; M., K. & T. Ry. Co. v. Harriman Brothers, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Whitehill v. Western Union Telegraph Co. (C. C.) 136 Fed. 499; Manier v. Western Union Telegraph Co., 94 Tenn. 442, 29 S. W. 732.

[3] Counsel for plaintiff, however, contends that the clause in question is void under section 9, article 23, Constitution of Oklahoma, which provides that:

"Any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void."

The Supreme Court of Oklahoma in Western Union Telegraph Co. v. Sights, 34 Okl. 461, 126 Pac. 234, 42 L. R. A. (N. S.) 419, Ann. Cas. 1914C, 204, and in Western Union Telegraph Co. v. Crawford, 29 Okl. 143, 116 Pac. 925, 35 L. R. A. (N. S.) 930, did so decide. The case having arisen in Oklahoma this construction of the Constitution of that state is binding upon us, if it is applicable to the case at bar.

[4] Counsel for the Company, however, contend that by the act to regulate commerce, as amended June 18, 1910 (36 Stat. 539), the United States under the power to regulate commerce have occupied the whole field of transmission of interstate messages by telegraph, and therefore the provision of the Constitution of Oklahoma, above referred to, has been suspended so far as its effect on the regulation in question is concerned.

Pertinent to this contention, sections 1, 2, 6, 12, and 15 of the act to regulate commerce as amended, are cited. We cannot repeat those sections here, but it appears beyond question therefrom that, in so far as the provisions of the act to regulate commerce are applicable, it applies to all interstate telegraph business; that as to all interstate business, telegraph, telephone, and cable companies are common carriers within the meaning and purposes of the act; that as to their interstate business telegraph companies must print and publish their rates, rules, classifications, regulations, and practices, and file same with the Interstate Commerce Commission; that they shall establish reasonable rates, rules, regulations, and practices, but messages may be classified into day, night, repeated, unrepeated, and such other classes as are just and reasonable, and different rates may be charged therefor; that all rates, regulations, and practices must be reasonable and just; that penalties are imposed for any attempt to evade the published rates, rules, practices, or regulations; that the Interstate Commerce Commission shall determine what is a just and reasonable regulation or prac-

tice; that the rules and regulations established by telegraph companies or other common carriers are deemed reasonable and just until changed by the Interstate Commerce Commission. It results necessarily from the foregoing conclusions that Congress has not only taken possession of the field of interstate commerce by telegraph, but has also specifically prescribed the rules which shall govern the transaction of such commerce.

The Interstate Commerce Commission in W. N. White & Co. v. Western Union Telegraph Co., 33 Interst. Com. Com'n R. 500, assumed jurisdiction without question of a case involving the reasonableness of the rates of the Company between New York and San Francisco, and by cable from New York to points in England. Hall, Commissioner, in delivering the opinion of the Commission, said:

"Jurisdiction over these cable rates is clearly conferred upon us by the act to regulate commerce and is admitted of record by counsel for defendant."

The jurisdiction of the Commission was so plain in regard to the service between New York and San Francisco as not to call for any statement whatever. It was further said in the same case:

"It is plain that both classification and charge are to be made in the first instance by the carrier, and it follows by necessary implication that the carrier is to define the classes and formulate such rules and regulations pertaining thereto as shall be just and reasonable. The initiative is with the carrier."

See also Conference Rulings, Bulletin No. 6, regulations Nos. 407, 410, 420, 426, 456, and 460. These rulings show that the Interstate Commerce Commission has assumed specific control of interstate telegraphic business.

The case of Western Union Telegraph Co. v. E. A. Bilisoly, 116 Va. 562, 82 S. E. 91, was a suit by the sendee of a message for a statutory penalty on account of the delay in delivery of a night letter. In this case the Supreme Court of Appeals said:

"By an act of Congress approved June 18, 1910, telegraph companies, so far as interstate business is concerned, have been placed under the direct supervision of the Interstate Commerce Commission, and are subject, so far as applicable, to the same rules, regulations, restrictions, and penalties that are imposed upon common carriers. This act has occupied the entire field and taken complete control of the regulation of telegraph companies, and while it has impliedly exempted them from any penalty for negligence it has provided a severe maximum penalty for intentional discrimination. Before the passage of this act there had been no legislation by Congress affecting or conflicting with the state statutes imposing a penalty for failure to deliver messages promptly, and therefore the state statutes affecting telegraph companies were upheld, even as to interstate messages, upon the ground that until Congress had legislated upon the subject-matter of telegraph companies, the state statutes were applicable. James Case, 162 U. S. 650 [16 Sup. Ct. 934, 40 L. Ed. 1105]; Commercial Milling Co. Case, 218 U. S. 406 [31 Sup. Ct. 59, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815]; Crovo Case, 220 U. S. 364 [31 Sup. Ct. 399, 55 L. Ed. 498], and others. * * * It would be inconvenient, as well as unnecessary, to recite the detailed provisions of the act of Congress approved June 18, 1910. It is sufficient to say that by it Congress has occupied the field of regulation with respect to interstate telegrams, and hence the state statute imposing a penalty for failure to make prompt delivery can no longer be invoked in such cases. The act of Congress has ousted the state of jurisdiction over the subject."

This case was followed in Western Union Telegraph Co. v. First National Bank of Berryville, 116 Va. 1009, 83 S. E. 424. The following cases also directly support the contention of the Company: Dodge v. Adams Express Co., 54 Pa. Super. Ct. 422; Ridge v. Erie Railroad Co., 54 Pa. Super. Ct. 602; Strause Iron Co. v. Western Union Telegraph Co., —— Pa. Super. Ct. ——; Western Union Telegraph Co. v. Compton, 114 Ark. 193, 169 S. W. 946; Western Union Telegraph Co. v. Johnson (Ark.) 171 S. W. 859; Western Union Telegraph Co. v. Simpson (Ark.) 174 S. W. 232; Western Union Telegraph Co. v. Holder (Ark.) 174 S. W. 552.

The case of Western Union Telegraph Company v. Brown, 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457, was a suit to recover damages on account of the negligent failure to deliver in the District of Columbia a telegram sent from South Carolina. The addressee of the telegram sued the company in the state court of South Carolina and sought to recover damages for mental anguish suffered by reason of the nondelivery of the telegram. This was made a cause of action by the statute of South Carolina (Civil Code 1902, § 2223). The Supreme Court, after holding that the law of South Carolina could not be invoked for the recovery of damages for a tort committed in the District of Columbia, also said:

"What we have said is enough to dispose of the case. But the act also is objectionable in its aspect of an attempt to regulate commerce among the states. That is, as construed, it attempts to determine the conduct required of the telegraph company in transmitting a message from one state to another or to this District by determining the consequences of not pursuing such conduct, and in that way encounters Western Union Telegraph Co. v. Pendleton, 122 U. S. 347 [7 Sup. Ct. 1126, 30 L. Ed. 1187], a decision in no way qualified by Western Union Telegraph Co. v. Commercial Milling Co., 218 U. S. 406 [31 Sup. Ct. 59, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815]."

We think also that the Supreme Court of the United States has in the following cases decided the question under consideration in favor of the company: Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Atchison, Topeka & Santa Fé Railway Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; St. Louis, Iron Mountain & Southern Railway Co. v. Edwards, 227 U. S. 265, 33 Sup. Ct. 262, 57 L. Ed. 506; Boston & Maine Railway Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Erie Railroad Co. v. New York, 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; Southern Railway Co. v. Reid, 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257.

We have examined the cases cited by plaintiff and find them to be cases which arose prior to the amendment of the Interstate Commerce Law of June 18, 1910, or they are cases in which state legislation only indirectly burdened interstate commerce. Since the amendment above referred to we find no conflict in the authorities in cases where the facts are similar to the one at bar. Congress has taken possession of the field of interstate commerce by telegraph and it results that the power of the states to legislate with reference thereto has

been suspended. The great necessity that commerce between the states should be free from such interference applies in a marked degree to interstate commerce by telegraph. If the regulation which is pleaded in bar in this suit should be held valid in Kansas, and void in Oklahoma, and the illustration may be extended to all the states of the Union, then the power of the United States to regulate commerce between the states in relation to telegraphic business would not only be directly interfered with, but destroyed.

[5] We think that the stipulation in the record that Mr. Lingafelt if present would testify to the facts therein stated shows that the Company has done all that can be required of it in regard to the filing of its schedule of rates, regulations, and practices. We are therefore of the opinion that Congress having taken possession of the field of interstate commerce by telegraph, the provision of the Constitution of Oklahoma relied upon has become inoperative for the purpose of striking down the regulation in question. Whether the regulation is a reasonable one or not is in our judgment a question for the Interstate Commerce Commission to determine. Mitchell Coal & Coke Co. v. Pa. R. Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472; Chicago & Alton Ry. Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

Judgment affirmed.