## No. 9713.

RYAN, ET AL. *v*. THE COLORADO POSTAL TELEGRAPH CABLE COMPANY.

Decided February 7, 1921.

Action against a telegraph company for damages occasioned by failure to deliver a telegram. Judgment for plaintiffs.

*Affirmed.*

1. TELEGRAPH COMPANIES—*Interstate Carriers—Federal Questions.* Under the interstate commerce act as amended June 18, 1910, all controverted matters pertaining to rates and regulations of telegraph companies doing an interstate business, are exclusively federal questions and state courts are bound by the federal decisions thereon.

2.     *Liability for Non-delivery of Telegram.* The conditions upon the back of a telegraph blank furnished by a company doing an interstate business, to the effect that the company shall not be liable for mistakes, delays or non-deliveries beyond the cost of the telegram, if it be an unrepeated message, and not more than fifty times such cost if it be a repeated message, held to be valid and binding, notwithstanding the admitted negligence of the company and great loss occasioned by its failure to deliver a message.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. PATRICK D. CONNOR, for plaintiffs in error.

Messrs. DANA, BLOUNT & SILVERSTEIN, for defendant in error.

*Department Three.*

MR. JUSTICE BAILEY delivered the opinion of the court.

PLAINTIFFS brought suit to recover damages from the defendant corporation, The Colorado Postal Telegraph Cable Company, for its negligent failure to deliver a telegram. The facts are undisputed. Plaintiffs gave the message to the superintendent of the company at Denver for transmission to New York City. It was wired to Chicago, and there lost. The message was located in Chicago upon search by the Denver office on complaint of plaintiffs. It is also undisputed that through failure to deliver the message plaintiffs suffered a loss of $1,500.00. Upon this state of facts both parties moved for a directed verdict, and the court directed one for plaintiffs in the sum of eighty cents, upon which judgment was entered, that being the amount

paid by them for transmission of the message.   Plaintiffs bring the judgment here for review on error.

The trial court held that the conditions upon the back of the telegraph blank furnished by the defendant company in receiving messages were valid and binding on all patrons. It is there stipulated that the telegraph company shall not be liable for mistakes, delays or non-deliveries, whether caused by the negligence of its servants or otherwise, beyond the cost of the telegram, if it be an unrepeated message, and not for more than fifty times such cost if it be a repeated message.   The message here involved was an unrepeated one.

It is urged by plaintiffs that the law in this jurisdiction will not permit telegraph companies to contract for immunity against their own negligence.   In support of this contention are cited *Western Union Tel. Co. v. Graham,* 1 Colo. 231, 9 Am. Rep. 136; *Western Union Tel. Co. v. Cornwall,* 2 Colo. App. 491, 31 Pac. 393; *Postal Tel. Co. v. Barwise,* 11 Colo. 335, 53 Pac. 252; and *Western Union Tel. Co. v. Eyser,* 2 Colo. 141.   These cases, however, were all determined prior to the passage of the amendment to the Interstate Commerce Act.   This amendment was adopted by the act of June 18, 1910, and that portion relative to telegraph companies is as follows, found in volume 36, U. S. Statutes at Large, page 538:

"The provisions of the act shall apply  *  *  *  to telegraph, telephone and cable companies,  *  *  *  engaged in sending messages from one state, territory, or district of the United States, to any other state, territory, or district of the United States, or to any foreign country, who shall be considered and held to be common carriers within the meaning of this act.  *  *  *  All charges made for any service rendered or to be rendered  *  *  *  for the transmission of messages by telegraph, telephone, or cable, as aforesaid, or in connection therewith, shall be just and reasonable; and every unjust and unreasonable charge for such services or any part thereof is prohibited and declared to be unlawful:   Provided, that messages by telegraph,

telephone, or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages."

Section 15 of the amended act vests in the Interstate Commerce Commission full and exclusive jurisdiction in the first instance of all questions relative to the reasonableness, or the reverse, of all rates and tariffs for the transmission of messages by telegraph or telephone, and also all questions relative to the regulation and practice of such carriers, as to whether their rates and regulations be preferential, or otherwise unjust or unlawful.

The sole question for determination is whether the stipulation as to the liability of the company is valid and binding. In deciding this question we are precluded from considering the cases from our own jurisdiction, because the passage of the Interstate Commerce Act, and the adoption of the amendment, have taken the matter from the courts of the several states and made it exclusively a federal question. *Gardner v. Western Union Tel. Co.,* 231 Fed. 405, 145 C. C. A. 399. Since this court is bound by the federal decisions upon such questions, the case at bar is ruled by the holdings of the Supreme Court of the United States. In *Postal Telegraph Cable Company v. Warren-Goodwin Lumber Company,* 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. 118, determined in December, 1919, the question was whether the Interstate Commerce Act as amended excluded state action in reference to interstate business of telegraph companies, and limited the liability of such companies to the terms of their stipulations on the back of their telegraph blanks. After discussing numerous state and federal cases touching these questions the court said, at page 30:

"In the second place, as in terms the act empowered telegraph companies to establish reasonable rates, subject to the control which the act to regulate commerce exerted, it follows that the power thus given, limited of course by

such control, carried with it the primary authority to provide a rate for unrepeated telegrams and the right to fix a reasonable limitation of liability where such rate was charged, since as pointed out in the Primrose case, (154 U. S. 1) the right to contract on such subject was embraced within the grant of the primary rate-making power."

In *Western Union Tel. Co. v. Boegli,* 251 U. S. 315, 40 Sup. Ct. 167, 64 L. Ed. 281, it was held that the Act of 1910 was not to be narrowly construed, to preserve any reserve power in the several states, and that the Act left no room for exercise by a state of regulative power, by penalizing any negligent failure to promptly deliver an interstate telegram.

The latest pronouncement of the Supreme Court of the United States upon the precise question here involved is found in *Postal Telegraph Cable Co. v. Dickerson,* a memorandum opinion reported in U. S. Supreme Court Advance Opinions, No. 4, January 1st, 1921. Suit was by Dickerson against the telegraph company in a Mississippi state court, for actual and punitive damages on account of the alleged failure of the defendant to transmit and deliver an interstate telegram within a reasonable time, wherein plaintiff recovered substantial damages, which judgment was affirmed by the Supreme Court of that state. On certiorari to review the judgment of the Supreme Court of Mississippi, the United States Supreme Court held that the case was ruled by *Postal Telegraph Cable Co. v. Warren-Goodwin Lumber Co.,* and *Western Union Telegraph Co. v. Boegli, supra,* and the judgment of the state court was reversed.

In view of the federal decisions, which are binding on us, the judgment of the trial court must be affirmed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BURKE concur.