## No. 11,838.

### Western Union Telegraph Company *v.* Trinidad Bean and Elevator Company.

Decided May 28, 1928.

Mr. M. G. Saunders, Mr. E. F. Chambers, Mr. Francis R. Stark, for plaintiff in error.

Mr. Francis H. Hall, for defendant in error.

*Department Two.*

Mr. Justice Adams delivered the opinion of the court.

Action by the Trinidad Bean and Elevator Company against The Western Union Telegraph Company for damages on account of failure to deliver a telegram. Verdict and judgment for plaintiff. Defendant brings error. The parties will be referred to as plaintiff and defendant, as aligned at the trial.

Plaintiff's principal office and place of business is at Trinidad, Colorado. E. L. Reeves and Co. of Columbia, S. C., act as one of plaintiff's brokers. The telegram not delivered to plaintiff, for which it got damages, was delivered to defendant on January 20, 1925, at 3:12 p. m., from Reeves and Co. at Columbia, South Carolina, for transmission to plaintiff at Trinidad, Colorado. The message reads thus: "Answering Sensation Branch Model Mills Company Johnson City, Tennessee rated three quarter million advise." This is Exhibit G. Plaintiff claims that it was the last of a series of seven telegrams, interchanged between Reeves and plaintiff on the same day, "to the end of selling a carload of beans to The Sensation Flour Company of Columbia, South Carolina," and at the time Exhibit G "was delivered to defendant for transmission and delivery the defendant well knew, or by the exercise of reasonable care and caution in the premises could well have known, the importance of said message and the necessity for transmitting and delivering the same with care and dispatch; that had the defendant delivered said message to this plaintiff this plaintiff would have made said sale of said carload of beans and would have made a net profit thereon of $480.00, but by reason of the failure of the defendant to deliver said message to this plaintiff as it undertook to do and was bound to do, the plaintiff herein failed to make said sale of said carload of beans and thereby was damaged in the sum of $480.00."

The previous six telegrams, duly delivered, are exhibits A to F. They are partly in cipher. We need

not quote them. Giving plaintiff the advantage of the most favorable construction, and by accepting its interpretation of the words in cipher, they show first, Exhibit A, an order from Reeves for 361 bags of beans, which plaintiff's president said was an acceptance of plaintiff's previous offer, but which the latter would not have filled, and did not fill, because the market had advanced. The company wired Reeves, Exhibit B, telegram in cipher meaning in English: Market strong best subject confirmation six hundred bags Great Northerns Seven-forty-five delivered hurry. Exhibit C, Reeves wired plaintiff, "Answering Book Car * * * " Exhibit D, plaintiff wired Reeves, "Must know buyers names quantities each before can consider order for confirmation * * *." Exhibit E, from Reeves to plaintiff, one of the words in cipher, message translated, reads: "Answering Buyer Sensation Flour Columbia Book Six Hundred Great Northerns Have Written Shipping Instructions Send Buyer Large Sample." Plaintiff promptly replied: "Sorry cannot accept as cannot find buyer rated anyplace." This was the last of the telegrams, except Exhibit G, delivered to the company for transmission, but not received. The complaint is for failure to deliver Exhibit G. Plaintiff introduced the previous telegrams to show its negotiations with its broker, and that defendant had notice and knowledge of the importance of the transaction. Defendant admitted that it received Exhibit G for transmission and that it failed to deliver the message. Its sole defense was that plaintiff was not damaged.

Plaintiff's only witness was its president and manager. Defendant offered no evidence, and moved for a directed verdict at the close of plaintiff's testimony, which was denied. The essential substance of plaintiff's testimony was that if it had received the telegram, Exhibit G, promptly, it would have shipped the beans, and would have made four hundred and eighty dollars in this way. Agreed price $4,470, plus $30 to the broker, total $4,500;

freight $630; beans cost plaintiff, $3,390; it is claimed that profit would have been $480.

1. There are twenty assignments of error, but we need to discuss only one: Was plaintiff damaged? The rule applicable is stated in *Primrose v. Western Union Telegraph Co.*, 154 U. S. 1, 29, (14 Sup. Ct. 1098) in these words:

"In *Hadley v. Baxendale*, 9 Exch. 345, decided in 1854, ever since considered a leading case on both sides of the Atlantic, and approved and followed by this court in *Western Union Tel. Co. v. Hall*, above cited (124 U. S. 444, 453), and in *Howard v. Stillwell Co.*, 139 U. S. 199, 206, 207, Baron Alderson laid down, as the principles by which the jury ought to be guided in estimating the damages arising out of any breach of contract, the following: 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.' "

The foregoing rule was followed in *Postal Tel. Cable Co. v. Barwise*, 11 Colo. App. 328, 332, 53 Pac. 252; *Western Union Telegraph Co. v. Graham*, 1 Colo. 230, 245; *Western Union Tel. Co. v. Cornwell*, 2 Colo. App. 491, 495, 31 Pac. 393. In Jones on Telegraph Companies, § 516, p. 490, the author says the rule "is so generally used that it has become a proverb in law. * * * As can be seen, this rule excludes the consideration of all damages which are remote or speculative, and only such as are the proximate consequence of the injury complained of can be recovered."

2. Applying the above to the case at bar, we remark that Exhibits A to F not only fail to show that plaintiff had a contract for the sale of beans, but they show affirm-

atively, in connection with plaintiff's testimony, that in fact there was no contract; that plaintiff had refused to agree, first, because of price, and lastly, because it could not find the buyer rated. Whatever plaintiff's reasons were, negotiations were closed; there was no obligation upon it to ship, hence no obligation on the prospective purchaser to take, and so, no contract. Therefore, the starting point in determining defendant's liability is, did plaintiff lose a new sale, and if so, what was the effect on the rights of the parties?

Obviously, the greater number of contingencies brought into the transaction, correspondingly, the more remote becomes defendant's liability. We are struck with the predominance of the intervening "ifs," between plaintiff and the contract claimed to have been lost. If the telegraph company was apprised of the importance of the message. If the telegram had been delivered. If plaintiff had renewed negotiations with its broker, countermanded its refusal, and notified the broker that it would take $7.45 per bag for 600 bags of beans. If the broker had agreed to that price. If the broker had agreed to take five cents per bag for his profit. If the broker had communicated plaintiff's offer to the customer, a third party. If the customer was ready, able and willing to buy on plaintiff's terms on a fluctuating market. If the customer had accepted the offer. If the broker had communicated such acceptance to plaintiff. If plaintiff had shipped the beans. If the customer had received and accepted them, and paid the purchase price. If the market price remained unchanged in the interim, when the evidence shows that it had advanced fifty cents by the time the first telegram had been delivered, and when plaintiff wired "market strong," or whether the market went up or down, bearing on the question of whether plaintiff really lost, or actually gained, by the failure to deliver the telegram. And now, and if, the substantial or material parts of this combination of circumstances had been shown according to the facts of a given case, plain-

tiff might, or might not, have made a profit of four hundred and eighty dollars.

It is true that plaintiff's witness testified that it would have shipped the beans, if the telegram had been delivered promptly, and that it would have made a profit of four hundred and eighty dollars, but there is no evidence that the purchaser would have taken them, after plaintiff had declined to carry out its first agreement to sell beans at $6.95 per bag, because it could make more by holding them, and thereafter refused again to sell at $7.45, because it did not know the customer's rating. An acceptance was necessary, and the burden of proving it was on plaintiff, in which it failed.

3. Whether plaintiff could have recovered if the proof had sustained the allegations, on a case that did not do violence to the above decisions, we need not say, for the evidence is plain that the judgment is based on damages, which at best, were remote, conjectural and speculative, and so cannot be upheld. The motion for a directed verdict should have been granted. The court instructed the jury as to the law in question, but the verdict shows that it disregarded such instructions, and that the jurymen assumed the existence of essential facts of which there was no proof.

4. As to telegraph companies doing an interstate business, we are bound by the federal decisions, and particularly by the decisions of the Supreme Court of the United States. *Ryan v. Colo. Postal Tel. Cable Co.,* 69 Colo. 542, 545, 195 Pac. 645; *Gardner v. Western Union Tel. Co.,* 231 Fed. 405, 145 C. C. A. 399; *Western Union Tel. Co. v. Priester* (U. S.), 48 Sup. Ct. 234.

We have examined all of the cases cited by counsel on each side, and a great many more. They confirm our belief that we are correct. Counsel for plaintiff cites only one case in his brief, *Western Union Telegraph Co. v. Longwill,* 5 N. M. 308, 21 Pac. 339, with quotations from it, including a New York case, *Griffin v. Colver,* 16 N. Y. 489, 69 Am. Dec. 718, decided in 1858, long before the

United States Supreme Court or this court had spoken on the point. At that, we find nothing in it out of harmony with this opinion. The Longwill case was a suit by a physician, for damages which were the direct and proximate consequence of a failure to deliver a telegram. It is not in point, and if it were, it could not overrule our adherence to the federal decisions.

The judgment is reversed, with directions to enter judgment for defendant.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE BUTLER and MR. JUSTICE CAMPBELL concur.