**BELFOR USA GROUP, INC.,**
**Plaintiff–Appellee,**

v.

**ROCKY MOUNTAIN CAULKING AND WATERPROOFING, LLC,**
**Defendant–Appellant.**

No. 05CA0022.

Colorado Court of Appeals,
Div. III.

Aug. 10, 2006.

Certiorari Denied Dec. 18, 2006.

Burg Simpson Eldredge Hersh & Jardine, P.C., Diane Vaksdal Smith, Tiffanie D. Stasiak, Englewood, Colorado, for Plaintiff–Appellee.

The Hustead Law Firm, P.C., Patrick Q. Hustead, Jennifer J. Gifford, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Rocky Mountain Caulking and Waterproofing, LLC, appeals the trial court's remittitur of the jury's damages award. We reverse and remand.

Plaintiff, Belfor USA Group, Inc., hired Rocky Mountain to install caulking and waterproof coatings on 161 exterior decks of an apartment complex. The contract between Rocky Mountain and Belfor was a lump sum contract for $184,831. Rocky Mountain completed some, but not all of the work, and Belfor made some progress payments to Rocky Mountain but did not pay for all the work completed.

Belfor sued Rocky Mountain for breach of contract and negligence in connection with the project. Rocky Mountain counterclaimed for breach of contract with respect to the remaining unpaid invoices, describing its damages as follows: "Defendant Rocky Mountain ... performed all services required under the Subcontract and [invoiced] [Belfor] for sums totaling $12,582.90.... Plaintiff Belfor is in breach of the Agreement by reason of nonpayment of amounts due and owing under the Subcontract Agreement." Rocky Mountain also sought to foreclose a mechanic's lien for $12,582.90.

In Rocky Mountain's initial C.R.C.P. 26(a)(1) disclosures, it provided the following description and computation of damages: "Rocky Mountain ... seeks judgment against Belfor ... in an amount to be proven at trial, pre and post judgment interest, costs, expert witness fees, and that the Court decree that Rocky Mountain ... has a valid lien for the principal sum of $12,582.90 plus interest."

In the trial management order, Rocky Mountain stated that it "provided labor, materials, equipment, services, design and plans for the construction of improvements to the property with a reasonable value of $12,582.90, all of which were ordered by [Belfor] for incorporation into the property" and that it "is due this principal sum, interest at the statutory rate of 12% per annum, together with costs of the foreclosure certificate, and the recording of a mechanic's lien on the property." Before trial, Rocky Mountain

dismissed its mechanic's lien claim, electing to prosecute only its breach of contract claim.

At trial, one of the principals of Rocky Mountain testified that progress payments were keyed to Rocky Mountain's work as it completed all the decks of any one apartment building. When Rocky Mountain completed the decks of a particular building, it would invoice Belfor. He testified that only four invoices totaling $12,582.90 remained unpaid. Belfor did not object to this testimony, and the trial court did not give any instruction to disregard this testimony.

The witness also testified that Belfor had paid Rocky Mountain $65,380 for work performed. He then attempted to testify concerning Rocky Mountain's lost future profits:

> Q. So the total work bill paid, and then bill not paid, is about [$]77,962.10, does that sound about right?
>
> A. Yes, it does.
>
> Q. Okay. Now if you subtract that amount billed from the original contract price, you get a balance worth left to complete of [$]106,868.10, does that sound right?
>
> A. It sounds right.
>
> Q. Okay. Now if you would have been allowed to complete that work, what would have been your overhead profit on that?
>
> A. Roughly 30 percent.
>
> Q. Okay. And if you, now it would be 30% of 106 for another $30,000 would it?
>
> A. Well, it would be figured in off of the base number for costs.
>
> Q. Because this number already includes overhead and profits?
>
> A. That's correct.

After an unrecorded bench conference with counsel, the court ruled that the jury must disregard the testimony regarding lost profits because "there has been no such claim in the counterclaim in this case, or in any of the higher [sic] disclosure documents."

Belfor's vice president later testified that his experts had agreed that Rocky Mountain "had worked on approximately 150" of 161 decks, which amounted to about 93% of the total deck waterproofing contract, representing $171,120 based upon a mathematical interpolation, using 161 decks as the total and a contract lump sum price of approximately $184,000. He agreed that, under a lump sum contract, when a party performs 93% of the work under the contract, it would be "fair" that such party be entitled to 93% of the contract sum, assuming the work is satisfactory. The trial court did not give any instruction to disregard this testimony.

Notwithstanding the trial court's earlier instruction to disregard testimony concerning lost profits because the claim had not been asserted or disclosed, at the close of the evidence the jury was given this instruction regarding Rocky Mountain's breach of contract counterclaim:

> [I]f actual damages have been proved, you shall award the amount of damages sought. You may award these damages if you find that they were a natural and probable consequence of the Counterclaim Defendant, Belfor USA Group, Inc.'s breach of contract and the Counterclaim Defendant reasonably could have foreseen at the time the parties entered into the contract that the damages would probably occur if they breached the contract.

Belfor did not object to this instruction, which was modeled after CJI–Civ. 4th 30:34 (2004).

The jury found in favor of Rocky Mountain on all Belfor's claims and on Rocky Mountain's breach of contract counterclaim, awarding damages of $106,868.10. After the jury read its verdict, Belfor moved for a judgment notwithstanding the verdict or alternatively for a new trial, arguing that the jury's award of damages could not be sustained on the evidence presented and that Rocky Mountain was precluded from recovering any amount over $12,582.90 based on its failure to specify damages above $12,582.90 in its pretrial disclosures.

Belfor then filed a motion for remittitur based upon Rocky Mountain's failure to disclose any damages beyond $12,582.90 pursuant to C.R.C.P. 16 and 26. The court granted the motion for remittitur, reducing the jury award to $12,582.90, and awarded pre and post judgment interest thereon.

Rocky Mountain contends that the trial court erred in granting Belfor's motion for remittitur. We agree.

We review a trial court's order of remittitur for an abuse of discretion. *See Walford v. Blinder, Robinson & Co.,* 793 P.2d 620 (Colo.App.1990): *Miller v. Carnation Co.,* 39 Colo.App. 1, 564 P.2d 127 (1977); *cf. George v. Welch,* 997 P.2d 1248 (Colo. App.1999) (because the damages award was not so clearly excessive as to indicate that the jury disregarded its instruction and instead awarded damages based on sympathy or prejudice, the trial court did not abuse its discretion in declining to set aside that award), *rev'd on other grounds,* 19 P.3d 675 (Colo.2000).

A judicial remittitur is "[t]he process by which a court reduces or proposes to reduce the damages awarded in a jury verdict." *Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.,* 95 P.3d 571, 582 (Colo.2004) (quoting *Black's Law Dictionary* 1298 (7th ed.1999) ).

The amount of damages to which an injured party is entitled is a matter within the sole province of the jury. The jury's award of damages may not be reversed unless the verdict is so grossly excessive as to indicate passion or prejudice. The amount of damages awarded by a jury may not be disturbed unless it is completely without support in the record. *Miller v. Rowtech, LLC,* 3 P.3d 492 (Colo.App.2000).

In Colorado, a jury verdict may generally not be set aside unless the court finds that the damages awarded are grossly and manifestly excessive, or grossly and manifestly inadequate. *Burns v. McGraw–Hill Broad. Co.,* 659 P.2d 1351 (Colo.1983). C.R.C.P. 59(e) also permits the court to grant a judgment notwithstanding a verdict where the evidence supporting the award is insufficient as a matter of law or where there are no disputes concerning any material facts and the moving party is entitled to judgment as a matter of law. *See Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544 (Colo.1988). And a new trial may be ordered where an irregularity in the proceedings has prevented a fair trial, where there is misconduct of the

jury, where an accident or surprise prejudices one party, where there is newly discovered evidence, where there are awarded excessive or inadequate damages, or where there is an error in law. C.R.C.P. 59(d).

"It is also well-recognized in Colorado that a trial court has the 'power to grant a new trial under C.R.C.P. 59 or *in the alternative, to deny the new trial on the condition that the plaintiff will agree to a remittitur of the amount of the damages found by the court to be excessive.' " Burns v. McGraw–Hill Broad. Co., supra,* 659 P.2d at 1356 (emphasis added) (quoting *Marks v. Dist. Court,* 643 P.2d 741, 744 (Colo.1982)).

Thus, before a remittitur is offered to the successful claimant, a trial court must determine that damages awarded by the jury are manifestly excessive. However, a new trial, and not remittitur, is the proper remedy if the trial court concludes that the jury's award was the product of bias, prejudice, or passion. *Burns v. McGraw–Hill Broad. Co., supra.*

Here, the trial court made no findings that the jury's verdict was influenced by passion, prejudice, or bias or that the award was manifestly excessive in light of the evidence presented at trial. Rather, the court granted Belfor's motion requesting remittitur, reducing the jury award to $12,582.90, the amount disclosed in connection with Rocky Mountain's mechanic's lien claim and the principal amount of damages it specified in the trial management order. The final judgment states only that "[t]he Court granted the Plaintiff's Motion for Remittitur and reduced the jury award." The court does not explain why its earlier order in limine, presumably entered as a discovery sanction, was not enforced with appropriate instructions when the jury was charged. In fact, a contrary instruction was given and it appears that the trial court attempted to correct this apparent contradiction by reducing the jury's verdict. Although Belfor requested the remittitur because of the prior order in limine, the remittitur order by its terms was not entered as a discovery sanction. Indeed, the court did not explain why the remittitur order was entered, but based upon the preceding motion

practice and Belfor's request, it appears that the remittitur was substituted for a discovery sanction. Of course, the trial court was free to enter a sanction under C.R.C.P. 37(c). *See Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973 (Colo.1999). Rather than impose a sanction, the trial court admitted previously barred evidence and then entered a remittitur even though the jury followed its instructions. Yet, there was no finding that the damages were excessive in light of the evidence adduced at trial, and Rocky Mountain was not given the option to reject the remittitur in favor of a new trial.

■ Ordinarily, where, as here, both parties agree that neither bias, prejudice, nor passion influenced the jury verdict, the verdict should be permitted to stand so long as it is not manifestly excessive in light of the evidence before the jury.

Belfor argues that the $106,868.10 award was manifestly excessive because it represented lost profits, evidence of which the jury was instructed to disregard because of Rocky Mountain's failure to request lost profits in its counterclaim and to disclose such damages pursuant to C.R.C.P. 16 and 26. Belfor also argues that the award was properly remitted to give full effect to the trial court's order in limine and its instruction to the jury to disregard evidence of lost future profits.

In contrast, Rocky Mountain contends that the $106,868.10 award is not excessive in light of the evidence before the jury and that evidence to support that award came from Belfor's own witness, so that it was not prejudiced by any discovery violation committed by Rocky Mountain. We do not condone Rocky Mountain's failure to disclose damage computations in discovery; however, in light of the trial court's jury instruction on damages, Belfor's failure to object to that instruction, the lack of any findings to support the remittitur, and the court's ordering remittitur without giving Rocky Mountain the option to refuse it, we cannot sustain the remittitur here.

■ Initially, we note that the trial court's order excluding evidence of lost profits refers to lost *future* profits, or those profits Rocky Mountain would have made on

the work it was not allowed to complete (the remaining nine decks) because of Belfor's breach. Lost future profits may be recoverable in a breach of contract action where they are the natural and probable consequence of a breach and are foreseeable. *See W. Union Tel. Co. v. Trinidad Bean & Elevator Co.,* 84 Colo. 93, 267 P. 1068 (1928). Colorado has adopted the rule of *Hadley v. Baxendale,* 9 Exch. 345, 156 Eng. Rep. 145 (1854), "a leading case on both sides of the Atlantic," which allows the recovery of damages "such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." *W. Union Tel. Co. v. Trinidad Bean & Elevator Co., supra,* 84 Colo. at 96, 267 P. at 1069. The notion of recovering damages proximately caused by a breach and within the contemplation of the parties is embodied in CJI–Civ. 4th 30:34, the instruction given to the jury here.

The court's order in limine did not exclude evidence of amounts due under the contract for labor actually performed by Rocky Mountain, nor did it specifically limit Rocky Mountain's damages to $12,582.90. Based upon the testimony of both Rocky Mountain's representative and Belfor's vice president, there was some evidence that Rocky Mountain had performed some work on 93% of the decks. Assuming the decks were completed, a jury could reasonably infer that Rocky Mountain had performed contract work worth approximately $171,120; that such amount was due; and that Rocky Mountain had received only $65,380 of the amount due.

Added to this evidence was the instruction which advised the jury that it could award damages that "were a natural and probable consequence of [Belfor's] breach of contract and [Belfor] reasonably could have foreseen at the time the parties entered into the contract that the damages would probably occur." This instruction certainly contradicted the court's earlier oral instruction, telling the jury to disregard evidence of lost future profits.

The verdict form did not break down the award into separate damage components, and therefore, we are unable to discern how the

jury computed its award or whether any portion of the award contains amounts for lost future profits as opposed to amounts presently due under the contract. The amount awarded, $106,868.10, is marginally close to 93% of the lump sum contract less $65,380, which was discussed in testimony.

Nevertheless, even to the extent that the jury's verdict included damages for lost future profits, it cannot be considered manifestly excessive in light of the jury instruction on Rocky Mountain's breach of contract damages. *See Bohrer v. DeHart*, 961 P.2d 472 (Colo.1998) (juries are presumed to follow instructions).

 In our view, the final jury instructions trump the trial court's previous instruction excluding evidence of lost future profits, and the jury acted properly to the extent it considered such evidence in its deliberations. *Cf. United States v. Powers*, 59 F.3d 1460, 1468 n. 9 (4th Cir.1995) ("When a limiting instruction conflicts with a final jury instruction, it is clear that the final instruction trumps any previous ones.").

 Finally, we conclude that the damages should not have been limited to the amount Rocky Mountain claimed in its pleadings, pretrial disclosures, or trial management order.

 C.R.C.P. 54(c) provides, in part: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." This rule, coupled with C.R.C.P. 15(b), provides some guidance as to the spirit with which the trial court should view a technical motion by a party to alter the jury's verdict to conform to the pleadings. Pleadings are to be construed so as to do substantial justice, and their purpose is merely the giving of notice of the issues to be litigated. *DeCicco v. Trinidad Area Health Ass'n*, 40 Colo.App. 63, 573 P.2d 559 (1977).

 A trial court's amendment of a verdict to limit a party's recovery to the amount claimed in the pleadings is error where the opposing party makes no objection to a jury instruction that does not specify any amount of damages and makes no allegation that undue surprise or prejudice resulted from the verdict. *DeCicco v. Trinidad Area Health Ass'n, supra; see also Worthen Bank & Trust Co. v. Silvercool Serv. Co.*, 687 P.2d 464 (Colo.App.1984) (final judgment should be in the amount to which plaintiff is entitled and is not limited to amount specified in complaint).

Here, Belfor failed to object to the jury instruction on Rocky Mountain's breach of contract damages, which did not limit recovery to a specified amount. And Belfor cannot argue in good faith that undue surprise or prejudice resulted from the verdict. Indeed, Belfor's vice president testified that Rocky Mountain had performed some work on 93% of the decks. Furthermore, Belfor's claim that it was inadequately notified of the amounts that Rocky Mountain would seek is weakened by the fact that in its C.R.C.P. 26 initial disclosures, Rocky Mountain sought damages in "amount to be proven at trial," in addition to a mechanic's lien in the amount of $12,582.90. *See Airborne, Inc. v. Denver Air Ctr., Inc.*, 832 P.2d 1086 (Colo.App.1992) (the trial court was not bound by the estimates of damages recited in the expert's earlier report, in his answers to interrogatories, or in plaintiff's trial data certificate, because plaintiff made clear that it would seek whatever damages were appropriate based on the evidence at trial).

In light of the jury instruction on Rocky Mountain's breach of contract damages, Belfor's failure to object to that instruction, the evidence introduced at trial, the trial court's failure to enter findings to support the remittitur, and the court's failure to afford Rocky Mountain the option to reject the remittitur and receive a new trial, we conclude that the trial court erred in reducing the jury's verdict from $106,868.10 to $12,582.90.

Accordingly, pre- and post-judgment interest should be awarded on $106,868.10.

The judgment of remittitur is reversed, and the jury's verdict is reinstated. The case is remanded to the trial court for fur-

ther proceedings to award pre and post judgment interest on the jury's award.

Judge TAUBMAN and Judge FURMAN concur.